UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **DEITRA SHELTON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **INDIANAPOLIS PUBLIC SCHOOLS,** | ) |
| | ) |
| **AMERICAN FEDERATION OF STATE,** | ) |
| **COUNTY AND MUNICIPAL** | ) |
| **EMPLOYEES AFL-CIO, INDIANA-** | ) **CASE NO. 1:18-cv-1676** |
| **KENTUCKY COUNCIL 962, and AFSCME** | ) |
| **LOCAL 661,** | ) |
| | ) |
| **LEWIS D. FEREBEE, individually, and in** | ) |
| **his official capacity as Superintendent of** | ) |
| **Schools,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **KENNETH PACK, individually, and in his** | ) |
| **official capacity as Director of Employee** | ) |
| **Relations,** | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.   INTRODUCTION**

1. This is a case of employment discrimination in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, as amended, brought by Plaintiff Deitra Shelton ("Shelton") against her former employer, Indianapolis Public Schools ("IPS"), and against her former union, the American Federation of State, County and Municipal Employees AFL-CIO, Indiana-Kentucky Counsel 962 ("Counsel 962") and AFSCME Local 661 ("Local 661")(collectively, "the Union") for violating the ADA.  Shelton also sues the Union, pursuant to Section 301 of the National

Labor Relations Act, 29 U.S.C. § 185, *et seq*. ("§ 301"), that the Union breached its duty to Shelton of fair representation..

2. Additionally, Shelton sues IPS Superintendent Lewis Ferebee ("Ferebee"), and IPS Director of Employee Relations Kenneth Pack ("Pack"), pursuant to 42 U.S.C. § 1983 ("§ 1983"), in their individual and official capacities, for depriving her of her civil rights under color of state law.

## II.  PARTIES

3. Shelton is a United States citizen, and at all times relevant to this action, has worked and resided within Marion County, Indiana, within the geographic boundaries of the Southern District of Indiana.

4. IPS is a school corporation as that term is defined by Ind. Code 20-18-2-16, and Ind. Code 20-23-4-3, and is a body corporate and politic, pursuant to Ind. Code 20-23-4-26, and at all times relevant to this action, has maintained facilities, and conducted operations within the geographic boundaries of the Southern District of Indiana, in Marion County.

5. Counsel 962 is a subdivision of the American Federation of State, County and Municipal Employees AFL-CIO, which is the largest trade union of public employees in the United States. Counsel 962 represents approximately 9,000 public employees in Indiana and Kentucky, including those in AFSCME Local 661, employed by IPS. At all times relevant to this action, both Counsel 962 and Local 661 have conducted business within the geographic confines of the Southern District of Indiana.

6. Ferebee is, and at all times relevant to this action has been, the Superintendent of School for IPS, and has been employed and conducted business within the geographic boundaries of the Southern District of Indiana.

7. Pack is, and at all times relevant to this action has been, the Director of Employee

Relations for IPS, and has been employed and conducted business within the geographic boundaries of the Southern District of Indiana.

### III. JURISDICTION AND VENUE

8. Shelton is an "employee" of IPS as defined by the ADA, 42 U.S.C. § 12111(4), and is a member of the Union.

9. IPS is a "covered entity" as defined by 42 U.S.C. § 12111(2), and an "employer" as defined by 42 U.S.C. § 12111(5).

10. The union is a "covered entity" as defined by 42 U.S.C.A. § 12111(2).

11. The Union is a "labor organization" within the meaning of 42 U.S.C. § 2000e, *et seq*.; a "covered entity" within the meaning of 42 U.S.C. § 12111, *et seq*.; and a "labor organization which represents employees in an industry affecting commerce" within the meaning of 29 U.S.C. 151, *et seq*.

12. At all times relevant to this action, Taylor was an "employee represented by" the Union, within the meaning of 29 U.S.C. § 151, *et seq*.

13. At all times relevant to this action, Ferebee was the Superintendent of IPS, and was performing his duties with respect to this action within the geographic boundaries of the Southern District of Indiana.

14. At all times relevant to this action, Pack was the Director of Employee Relations of IPS, and was performing his duties with respect to this action within the geographic boundaries of the Southern District of Indiana.

15. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12117, and 42 U.S.C. § 1983. All events giving rise to this action occurred in within the geographic boundaries of the Southern District of Indiana, making venue proper in this Court.

16. With respect to her disability discrimination claims, Shelton satisfied her obligation to exhaust her administrative remedies by timely filing a charge of discrimination alleging disability discrimination with the Equal Employment Opportunity Commission, receiving her Right to Sue Notice on March 6, 2018, and by commencing this action within ninety days of the receipt thereof.

## IV. FACTUAL ALLEGATIONS

17. Shelton began her employment with IPS as a bus driver on January 2, 1992.

18. At approximately that same time, Shelton became a member of the Union.

19. At all times relevant to this action, Shelton met or exceeded IPS's legitimate employment expectations.

20. On October 28, 2016, Shelton was injured on the job when the air rides (essentially shock absorbers) failed to function on the bus she was driving.

21. As a result of the malfunction, Shelton's hip went out.

22. Shelton went to IPS's workers compensation clinic that day, was advised by the physician on duty there was nothing seriously wrong, was given Tramadol, and was sent home.

23. After attempting to work for a couple of days, Shelton went to see Dr. Arnold Henry at IU Health, who ordered her to take off from work on or about November 1, 2016,

24. Dr. Arnold prescribed additional medication and physical therapy, and ordered Shelton to remain off work until June 12, 2017. Dr. Arnold also advised Shelton that she could no longer work as a bus driver or bus attendant due to the need to sit for long periods without relief.

25. Upon returning to work, Shelton was subject to a lifting restriction, and a requirement that limited her sitting and standing for lengthy periods.

26. Shelton sought a reasonable accommodation for her disability from IPS. After her initial 504 Accommodation Hearing, Shelton was told she should review available jobs on the IPS

website to see if any available job might accommodate her restriction.

27. Shelton applied for a number of clerical positions, however IPS refused to provide her clerical testing to determine if she could meet the requirements of those jobs.

28. Shelton also applied for a number of other positions, including the position of Administrative Assistant in Employee Relations.

29. Shelton did not receive any of the positions for which she applied.

30. One of the programs Shelton applied for was Coordinator of Internal Affairs and Investigations ("CIA&I").

31. None of the positions Shelton applied for were in the AFSCME bargaining unit.

32. The CIA&I position involved working with employee grievances and investigations.

33. By this time, Shelton had served as a union official, including a term as President of Local 661. In that position, Shelton had been responsible for dealing with a number of employee grievances.

34. Because the position was not subject to the union collective bargaining agreement, IPS could alter the terms and conditions of employment for the position at will.

35. Pack acknowledged Shelton was qualified for the position, but told her she would not be assinged to the position because "it would be a promotion."

36. Pack refused to engage in any discussions with Shelton to see if the position could be restructured so that it was not a "promotion."

37. Following a meeting with Pack on January 19, 2018, Shelton was officially informed by letter dated January 26, 2018, that she had been administratively terminated from IPS.

38. The letter was addressed, however, to Shelton's *former* address, despite the fact that Shelton had *repeatedly* supplied IPS with her current address through her job search. Additionally,

the letter was *returned to IPS with Shelton's new address included.*

39. As a result of the incorrect address, Shelton did not receive the letter until late February.

40. The Union filed a timely grievance of Shelton's termination, however Pack, on February 14, 2018, informed Tina Dillard ("Dillard"), Counsel 962's Staff Representative, who was effectively in charge of Local 661 at that time, that the Union's grievance procedure applied only to issues "arising out of or concerning the interpretation or application of the terms of the collective bargaining agreement[,]" and that Shelton's termination would have to be contested through IPS Administrative Guideline 4140.01.

41. In the same email, Pack noted that the Union had "represented a terminated employee as recently as November [2017] in a hearing pursuant to Admin. Guideline 4140.01."

42. Although Dillard disputed Pack's contention initially, on March 1, 2018, Dillard informed Shelton that her termination would have to be challenged through the IPS administrative process, rather than the Union's contractual grievance procedure.

43. Dillard also informed Shelton that the Union was "not willing in any way to provide [Shelton] with representation."

44. On February 22, 2018, Shelton received a certified letter from Pack advising her that her termination would have to be pursued through the IPS administrative procedure governing the discharge of classified employees.

45. In the letter, Pack informed Shelton that, to contest her termination through the administrative, she would have to make a written request to the Superintendent for a hearing which must be received by the Superintendent "within ten (10) days after you receive ***this letter**, or within ten (10) days from the date [the] U.S. Postal Service first attempts delivery, whichever is earlier.*"

46. Pack's letter was dated February 8, 2018, and the date stamp from the postage meter (not the Postal Service's postmark) should that the mail had stamped on Friday, February 9, 2018.

47. The earliest date Shelton could possibly have received the letter would have been Monday, February 12, 2018, which would have made Shelton's request for a hearing due (assuming she had, in fact, received the letter on that date) February 22, 2018.

48. However, the letter was addressed to Shelton's *former* address, despite the fact that Shelton had repeatedly update her address to IPS throughout her job search, and depsite the fact IPS was aware, or reasonably should have been aware, of Shelton's new address from the return of the January 26 letter.

49. In fact, the USPS made the first attempt to deliver the letter on February 22, 2018, to Shelton's old address, on February 22, 2018, which would have made Shelton's hearing request due no later than March 4, 2018.

50. However, in a letter dated March 2, 2018, Ferebee acknowledged that he was "in receipt of your request for a hearing to appeal the recommendation for your discharge."

51. According to Ferebee's letter, Shelton's appeal was received on February 23, 2018 while the deadline was February 22, 2018.

52. Ferebee's letter also states that the USPS's first notice of attempted delivery was February 12, 2018.

53. Ferebee denied Shelton's request for a hearing, even though it was well within the deadline based on the First Notice of Attempted Delivery for Pack's February 8, 2018 letter.

## V.  LEGAL ALLEGATIONS

**Count 1: Failure to Provide a Reasonable Accommodation Violation of the ADA – IPS**

54. Shelton incorporates paragraphs one (1) through fifty-three (53) of her Complaint by

reference.

55. Shelton's hip injury constituted a disability, as that term is defined by the ADA, making her disabled.

56. By refusing to engage in an interactive process to determine if the CIA&I position could be modified to provide a reasonable accommodation for Shelton, IPS denied Shelton a reasonabble accommodation, in violation of the ADA.

57. IPS's unlawful action was intentional, willful, and/or taken in reckless disregard for Shelton's rights.

58. As a direct and proximate result of IPS's unlawful actions, Shelton suffered, and continues to suffer, damages, including but not limited to loss of employment and benefits, emotional distress, anxiety, humiliation and embarrassment.

### Count 2: Discrimination in Violation of the ADA – the Union

59. Shelton incorporates paragraphs one (1) through fifty-eight (58) of her Complaint by reference.

60. Shelton's hip injury constituted a disability, as that term is defined by the ADA, making her disabled.

61. The Union refused to provide Shelton with representation for her administrative hearing to challenge her termination because of Shelton's disability.

62. The Union had provided similarly-situated, non-disabled employees with representation for administrative hearings to challenge their termination.

63. The Union's actions discriminated against Shelton because of her disability in violation of the ADA.

64. The Union's unlawful action was intentional, willful, and/or taken in reckless

disregard for Shelton's rights.

65. As a direct and proximate result of the Union's unlawful actions, Shelton suffered, and continues to suffer, damages, including but not limited to loss of employment and benefits, emotional distress, anxiety, humiliation and embarrassment.

### Count 3: Breach of Duty Under § 301 – the Union

66. Shelton incorporates the factual allegations contained in rhetorical paragraphs one (1) through sixty-five (65) of her Complaint by reference as though fully restated herein.

67. Shelton was a member of the Union.

68. The Union had a duty to represent Shelton fairly with respect to its representation of all other similarly-situated union member.

69. The Union breached its duty to fairly represent Shelton by refusing to provide Shelton with representation for her administrative hearing, despite having provided such representation to similarly-situated, non-disabled union members.

70. The Union's actions constitute a breach of duty under § 301.

71. The Union's action was intentional, willful, and/or taken with reckless disregard for Shelton's rights under § 301 the ADA and/or Title VII, and therefore The Union acted in bad faith.

72. As a direct and proximate result of The Union's material breach of its duty of fair representation, Shelton suffered, and continues to suffer, harm, including but not limited to loss of wages and benefits.

### Count 4: Deprivation of Rights Under Color of Law (§ 1983) – Pack and Ferebee

73. Shelton restates each and every allegation in paragraphs one (1) through seventy-two (72) of her Complaint as though fully set forth herein.

74. Shelton's employment with IPS was contractual.

75. Shelton has a protected property interest in her job by virtue of her contractual employment relationship with IPS.

76. Shelton is entitled to due process of law before she may be denied her property interest.

77. IPS provides a classified employee with the right to request a hearing to challenge an administrative termination.

78. Pack and Ferebee, acting together, intentionally manipulated the process of notifying Shelton of her right to request a hearing by intentionally mis-addressing the notifications, and by misstating the dates involved.

79. As a result of Pack's and Ferebee's action, Shelton was denied her due process right to request a hearing to challenge her termination, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

80. Pack and Ferebee acted under color of state law, in that, at the time of their actions, Pack was IPS's Director of Employee Relations, and Ferebee was the Superintendent of IPS, and both were exercising authority conferred upon them by the State of Indiana.

81. Pack's and Ferebee's actions were intentional, willful, and in reckless disregard of Shelton's right to due process.

82. As a result of Pack's and Ferebee's unlawful actions, Shelton has suffered, and continues to suffer, damages, including but not limited to, loss of employment and income, legal expenses, emotional distress, humiliation, embarrassment, and damage to her personal reputation.

## VI. **RELIEF**

**WHEREFORE,** Shelton respectfully prays that the Court find in her favor and:

83. Order IPS to reinstate Fidishin to the position she would have held absent IPS's

violation of the ADA, or pay Shelton front pay in lieu thereof;

84. Alternatively, Order IPS to reinstate Shelton to the position she would have held absent Pack's and Ferebee's unlawful deprivation of her rights;

85. Order all Defendants, jointly and severally, to pay Shelton's lost wages and benefits incurred as a result of their violations of the ADA and of her civil rights;

86. Order IPS to pay to Shelton compensatory damages for its violation of the ADA;

87. Order the Union to pay Shelton compensatory damages for its violation of the ADA;

88. Order Defendants Pack and Ferebee, jointly and severally, to pay Shelton compensatory damages for the unlawful deprivation of her civil rights;

89. Order Defendants Pack and Ferebee, jointly and severally, to pay Shelton punitive damages for their intentional actions depriving her of her civil rights;

90. Order all defendants, jointly and severally, to pay prejudgment and post-judgment interest on all sums recoverable;

91. Order all defendants, jointly and severally, to pay Fidishin's reasonable attorney fees and costs; and

92. Order all defendants, jointly and severally, to provide Fidishin with all other relief that is just and proper.

## DEMAND FOR TRIAL BY JURY

The Plaintiff, Deitra Shelton, by counsel, requests a trial by jury on all issues so triable.

Respectfully submitted,

_s/   Jay Meisenhelder_
Jay Meisenhelder, Atty No. 19996-49
JAY MEISENHELDER EMPLOYMENT
& CIVIL RIGHTS LEGAL SERVICES, P.C.
650 North Girls School Road, Suite B20
Indianapolis, IN  46214
Office Telephone:     317/231-5193

Facsimile Number: 317/982-5463  
Email Address: jaym@ecrls.com